

## Fourth Court of Appeals
### San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-22-00330-CV

**IN THE INTEREST OF L.G.D.** and R.O.B., Children

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2021-PA-00769
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Luz Elena D. Chapa, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 23, 2022

AFFIRMED

This appeal arises from the trial court's order terminating the parental rights of appellants J.B., the biological father of R.O.B., and N.D., the biological mother of L.G.D. and R.O.B.[1]  By one issue each, appellants argue that the evidence is legally and factually insufficient to support the trial court's finding that termination of their parental rights is in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(b)(2).  We affirm.

### I. BACKGROUND

In May 2021, the Texas Department of Family and Protective Services (hereinafter the "Department") initiated the underlying proceeding by filing a petition to terminate the parental

---

[1] We refer to the child and the child's family members by their initials in accordance with the rules of appellate procedure.  *See* TEX. R. APP. P. 9.8(b)(2).

rights of N.D. to her seven-year-old child, L.G.D. Two months later, the Department amended its petition to include a request to terminate the parental rights of N.D. and J.B. to their newborn child, R.O.B. Thereafter, the trial court signed a temporary order appointing the Department as the children's temporary managing conservators, and the children were removed from J.B. and N.D.'s custody. Both parents executed a family service plan. The plans were adopted and incorporated into a court order. Ultimately, the Department proceeded to a bench trial, at which Father appeared only through counsel. Kayla Bustamante, a Department case worker, and N.D. testified.

Bustamante recounted the requirements in N.D.'s family service plan and N.D.'s compliance. Of the family service plan requirements, N.D. completed parenting classes and a substance abuse assessment. However, N.D. fell short on other service plan requirements. Specifically, Bustamante testified that N.D. had "not been able to demonstrate sobriety" in that she failed to submit to three-months' worth of drug tests and had not completed individual counseling. N.D. also missed visits with the children from September 2021 through December 2021. According to Bustamante, N.D. moves back and forth between her mother's and father's homes. Bustamante opined that N.D. had not learned from the services that the Department afforded her and that termination was in the children's best interest, testifying:

> I've told her multiple times that she needs to demonstrate that she's staying sober. And by doing so, going to the drug tests, but she has not gone. Her counselor has concerns that she's not making any progress and sometimes appears under the influence during sessions. So I don't feel she's made any sufficient progress.
>
> . . .
>
> The children are in a safe stable home right now that's free of drug use, they're bonded to their caregiver. I spoke to [L.G.D.] and she tells me that she does not want to go back to her mother. She wants to stay with her current caregiver. I feel that [N.D.] hasn't addressed the reasons why we became involved and she cannot meet their needs at this time.

Bustamante concluded her assessment of N.D. by noting that she had not provided any support to the children during the placement period.

As with N.D., Bustamante had significant concerns regarding J.B.'s parenting abilities. He failed to avail himself of any of the services that the Department provided. Specifically, J.B. failed to complete a substance abuse assessment, random drug tests, a psychological evaluation, and parenting classes. J.B. lacked, according to Bustamante, a stable residence, and he was not responsive to her texts and phone calls. At the time of the April 2022 trial, J.B. had visited with R.O.B. only once since the case was initiated.

Bustamante testified that the Department received a referral after law enforcement detained J.B. and N.D. for operating a stolen vehicle, while L.G.D. rode in the backseat, that contained heroin and marijuana. After removal, the children were placed with the sister of L.G.D.'s deceased biological father, who resides in Sugarland, Texas and has acted as a foster mother since placement. Bustamante testified that L.G.D.'s biological aunt was a licensed foster parent with the Department and that she was ready, willing, and able to adopt both children. The children's placement with their foster mother was, according to Bustamante, meeting all of the children's needs. Bustamante further testified that she had no concerns regarding the foster mother and that adoption by the foster mother was in the children's best interest.

N.D. testified that she missed her drug tests because she lacks reliable transportation. N.D. argued against termination and placement of the children with the foster mother because L.G.D. would be separated from her sister, who resides in San Antonio, Texas.[2] N.D. acknowledged that she has unspecified "pending criminal matters," but she insisted that those charges would be dismissed.

At its conclusion, the trial court found by clear and convincing evidence that each parent had constructively abandoned the children who had been in the temporary managing

---

[2] The record contains no other information regarding L.G.D.'s sister.

conservatorship of the Department for not less than six months. TEX. FAM. CODE ANN. § 161.001(b)(1)(N). The trial court also found by clear and convincing evidence that J.B. voluntarily left R.O.B. alone or in the possession of another without providing adequate support for R.O.B. and remained away for a period of at least six months. *Id*. § 161.001(b)(1)(C). The trial court signed a final judgment terminating the parental rights of appellants J.B. and N.D. Both parents appealed from the termination order.[3]

## II. DISCUSSION

### A.    Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In

---

[3] Because N.D. did not file a notice of appeal, we ordered her to respond, explaining how this court has jurisdiction over her appeal. N.D. filed a response, requesting an extension of time to file a notice of appeal and requesting acceptance of her brief, which she had already filed and to which the Department had responded. We hereby deny N.D.'s request for an extension of time, but we construe N.D.'s response as an untimely notice of appeal and accept her appeal and brief. *See In re S.G.*, No. 02-18-00377-CV, 2018 WL 6427650, at *1 (Tex. App.—Fort Worth Dec. 7, 2018, orig. proceeding) (mem. op.) (denying mandamus relief but construing petition for writ of mandamus as manifesting an intent to invoke appellate review of trial court's order and directing the clerk of the court to docket the case as an appeal in a separate cause number); *see also Warwick Towers Council of Co-Owners ex rel. St. Paul Fire & Marine Ins. Co. v. Park Warwick, L.P.*, 244 S.W.3d 838, 839 (Tex. 2008) (explaining court of appeals has jurisdiction over an appeal if a party files an instrument "in a bona fide attempt to invoke appellate court jurisdiction" (citation omitted)). Although N.D. did not timely file a notice of appeal, we have jurisdiction over N.D.'s appeal because J.B. timely filed a notice of appeal. *See* TEX. R. APP. P. 25.1(b) ("The filing of a notice of appeal by any party invokes the appellate court's jurisdiction over all parties to the trial court's judgment or order appealed from."); *Rice v. Lewis Energy Grp., L.P.*, No. 04-19-00234-CV, 2020 WL 6293454, at *3 (Tex. App.—San Antonio Oct. 28, 2020, no pet.) (holding court had jurisdiction over untimely appeal by lawyers sanctioned by trial court where lawyers' clients timely appealed sanctions order).

reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## B.    Applicable Law:  Best Interest

It is the burden of the party seeking termination to establish that termination is in the child's best interest. *See id.* In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[4] The set of factors is not exhaustive, and no single factor is necessarily dispositive of the issue. *Id*. at 372; *In re A.B.*, 269 S.W.3d 120, 126 (Tex. App.—El Paso 2008, no pet.).

We recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, we also consider the factors set forth in section 263.307(b) of the Texas Family Code. *Id*. § 263.307(b). Additionally, evidence

---

[4] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See Holley*, 544 S.W.2d at 371–72.

that proves one or more statutory grounds for termination may be probative of a child's best interest, but it does not relieve the Department of its burden to prove best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). Additionally, a factfinder may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest. *Id*. In analyzing the evidence within the *Holley* framework, evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.*, 89 S.W.3d at 27. Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child, not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 470 (Tex. App.—San Antonio 2014, no pet.).

## C.     Analysis:  Best Interest

### 1.     *Desires of the Children*

L.G.D., who was almost eight years old at the time of trial, expressed to Bustamante that she "does not want to go back to N.D." and that she wants to stay with her foster mother. There is no evidence regarding R.O.B.'s desire; he was a newborn when he was placed with his foster mother. However, Bustamante testified that the foster mother was ready, willing, and able to adopt both children. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (when child is too young to express a desire, factfinder may consider whether child is bonded with caregiver and well-cared for). The desires of the children (the first *Holley* factor) weighs strongly in favor of termination regarding N.D. and are neutral regarding J.B.

**2.** ***Emotional and Physical Needs/Danger, Parental Abilities, and Improper Parent-Child Relationship***

The Department first intervened after J.B. and N.D. were discovered operating a stolen vehicle that contained heroin and marijuana. L.G.D. occupied the backseat. Additionally, N.D. acknowledged that she has unspecified "pending criminal matters." *In re S.A.M.*, No. 04-18-00607-CV, 2019 WL 573469, at *5 (Tex. App.—San Antonio Feb. 13, 2019, pet. denied) (mem. op.) ("A parent's criminal activities and history . . . are relevant to a best interest analysis, specifically to the emotional and physical danger to the child.").

There was also evidence allowing the factfinder to reasonably believe that the parents not only possessed drugs, but also consumed them. N.D.'s counselor, according to Bustamante, suspected that she was under the influence of drugs during counseling sessions. N.D. failed to submit to three-months' worth of drug tests; J.B. submitted to none. "A factfinder may reasonably infer from a parent's refusal to take a drug test that the parent was using drugs." *In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied); *accord In re D.G.*, No. 04-22-00044-CV, 2022 WL 1751370, at *4 (Tex. App.—San Antonio June 1, 2022, pet. denied) (mem. op.).

Illicit drug use is relevant to multiple *Holley* factors, including the children's emotional and physical needs now and in the future (the second factor), the emotional and physical danger to the children now and in the future (the third factor), N.D.'s and J.B.'s parental abilities (the fourth factor), the stability of N.D. and J.B.'s home (the seventh factor), and the acts or omissions which may indicate an improper parent-child relationship (the eighth factor). *See Holley*, 544 S.W.2d at 371–72; *see also In re S.A.M.*, 2019 WL 573469, at *5 ("Drug use tends to establish a course of conduct endangering the emotional and physical well-being of the child."). "Additionally, a parent's illegal drug use exposes [a] child to the possibility that the parent may be impaired or imprisoned." *In re A.M.L.*, No. 04-19-00422-CV, 2019 WL 6719028, at *4 (Tex. App.—San

Antonio Dec. 11, 2019, pet. denied) (mem. op.) (citing *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.)).

### 3. *Available Programs*

N.D. had not completed individual counseling. J.B. failed to complete a substance abuse assessment, a psychological evaluation, and parenting classes. N.D.'s and J.B.'s failures to avail themselves of the departmental programs implicate the fourth *Holley* factor — the parental abilities of the individuals seeking custody. *Holley*, 544 S.W.2d at 371–72. It also implicates the fifth *Holley* factor — the programs available to assist the individuals seeking custody to promote the child's best interest. *Id*. "A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of the child's family to seek out, accept, and complete counseling services and willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of an individual seeking custody and programs available to assist the individual as a best-interest factor).

### 4. *Stability of the Home*

Bustamante's testimony that N.D. moves back and forth between her mother's and father's homes allows for an inference that N.D. is not able to provide a stable home for the children. *See In re J.F.C.*, 96 S.W.3d at 266 (providing that in reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.").

Additionally, Bustamante testified that the foster mother was ready, willing, and able to adopt both children.

N.D.'s rotating homes and the foster mother's willingness to adopt both children implicate the seventh *Holley* factor — the stability of the home or proposed placement. *See Holley*, 544 S.W.2d at 371–72 (listing the stability of the home as a best-interest factor); *In re G.V.*, No. 14-02-00604-CV, 2003 WL 21230176, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2003, pet. denied) (mem. op.) (noting the stability that a proposed placement promises "weigh[s] heavily in the court's finding that termination is in the best interest" of a child). The stability of the home or proposed placement (the seventh factor), including the presumed drug use by N.D. already discussed, weighs strongly in favor of termination regarding N.D.

## C.  Disposition: Best Interest

N.D.'s presumed drug use, criminal activity, failure to avail herself of available programs, lack of a stable home, and the desires of the children — as explicitly expressed by L.G.D. — yields that the first, second, third, fourth, seventh, and eighth *Holley* factors weigh in favor of terminating N.D.'s parental rights to L.G.D. and R.O.B.  J.B.'s presumed drug use, criminal activity, and failure to avail himself of available programs, yields that the second, third, fourth, seventh, and eighth *Holley* factors weigh in favor of terminating J.B.'s parental rights to L.G.D. and R.O.B.

Accordingly, after viewing all of the evidence in the light most favorable to the best-interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of N.D.'s and J.B.'s parental rights was in L.G.D.'s and R.O.B.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266.  We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not have reasonably formed a firm belief or conviction that termination was in the children's best interest. *See id*.  Therefore, we hold the

evidence is legally and factually sufficient to support the trial court's best-interest finding.  *See*

TEX. FAM. CODE ANN. § 161.001(b)(2); *see also In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014)

(recognizing an appellate court need not detail the evidence if affirming a termination judgment).

N.D.'s and J.B.'s issues are overruled.

### III. CONCLUSION

We affirm the trial court's parental termination order.

Rebeca C. Martinez, Chief Justice